UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------X
WOWWEE GROUP LIMITED, WOWWEE :
CANADA, INC., AND WOWWEE USA,
INC., :

                  Plaintiffs, :

      -against- :

HAOQIN, *et al.*, :

             Defendants. :
--------------------------------------------------------X

**REPORT AND RECOMMENDATION**

17-CV-9893 (WHP) (KNF)

KEVIN NATHANIEL FOX
UNITED STATES MAGISTRATE JUDGE

TO THE HONORABLE WILLIAM H. PAULEY, UNITED STATES DISTRICT JUDGE

## PROCEDURAL HISTORY

The plaintiffs commenced this action asserting: (1) "trademark counterfeiting," pursuant to 15 U.S.C. §§ 1114(1)(b), 116(d) and 117(b)-(c); (2) "infringement of registered trademarks," pursuant to 15 U.S.C. § 1114; (3) "false designation of origin, passing off & unfair competition," pursuant to 15 U.S.C. § 1125(a); (4) "federal copyright infringement," pursuant to 17 U.S.C. § 501(a); (5) "deceptive acts and practices," pursuant to New York General Business Law § 349; (6) "false advertising," pursuant to New York General Business Law §350; (7) unfair competition; and (8) unjust enrichment. On December 19, 2017, your Honor issued: (i) a temporary restraining order; (ii) an order to show cause why a preliminary injunction should not issue and an order of notice; (iii) an asset restraining order; (iv) an order authorizing alternative service on the defendants by electronic means of the December 19, 2017 order and "all papers filed in support of Plaintiff's Application," made ex parte; (v) an order authorizing expedited discovery; (vi) an order directing the plaintiffs to post a security bond; and (vi) an order sealing the complaint and the plaintiffs' "*ex parte* Application." Docket Entry No. 21. On January 17,

1

2018, your Honor issued a preliminary injunction order, see Docket Entry No. 27, followed by the January 18, 2018 amended preliminary injunction order, which deemed effective service on the defendants by electronic means of the January 18, 2018 order "with the Summons and Complaint, and all papers filed in support of Plaintiffs' Application seeking" the January 18, 2018 order.  Docket Entry No. 28.

The plaintiffs filed notices of their voluntary dismissal of claims against certain defendants, pursuant to Rule 41(a)(1)(A)(i) of the Federal Rules of Civil Procedure, including a defendant not named in the complaint, "Akulaki."  See Docket Entry Nos. 164 and 165. Thereafter, the plaintiffs made a motion for a judgment by default and a permanent injunction against defaulting defendants, named in Attachment A to the Clerk's Certificate of Default, Docket Entry No. 121.  Although the plaintiffs asserted in their memorandum of law in support of the motion that they: (a) "only seek damages for their First and Second Causes of Action (Trademark Counterfeiting and Infringement)"; (b) "do not wave their Fourth Cause of Action (Copyright Infringement)"; and (c) "do not seek monetary relief in connection with the remaining causes of action plead in the Complaint," Docket Entry No. 142, on June 29, 2018, your Honor granted the "Plaintiffs' motion for a default judgment on all claims" as to the "defaulting Defendants, who are listed in Attachment A" to the June 29, 2018 order and referred the matter to the undersigned for: (1) "an inquest into statutory damages"; and (2) "a Report and Recommendation as to Plaintiffs' motion for a permanent injunction and for a post-judgment asset transfer and asset freeze order."  Docket Entry No. 153.  The plaintiffs did not file a notice of voluntary dismissal and no certificate of default was issued by the Clerk of Court against defendant Akulaku.

2

On September 6, 2018, the Court directed the plaintiffs to: (i) file their proposed findings of fact and conclusions of law and an inquest memorandum of law, accompanied by supporting affidavits and exhibits setting forth proof of their damages, serve the defaulting defendants and file proof of service with the Clerk of Court; and (ii) serve the defaulting defendants with a copy of the September 6, 2018 order and file proof of such service with the Clerk of Court. See Docket Entry No. 159. On September 10, 2018, the plaintiffs' attorney filed a Certificate of Service, asserting that "[o]n September 7, 2018, Plaintiff served Defaulting Defendants with a PDF copy of the September 6, 2018 Order and links to a secure web site where Defaulting Defendants could download a copy of the September 6, 2018 Order, via email, pursuant to the alternative service methods authorized in the TRO." Docket Entry No. 160. Thereafter, the plaintiffs filed their inquest submissions the: (a) Affidavit of Mary Kate Brennan ["Brennan"] in Support of Plaintiffs' Request for Statutory Damages and a Permanent Injunction with exhibits, Docket Entry No. 161; (b) Plaintiffs' Inquest Memorandum in Support of Plaintiffs' Application for Statutory Damages and a Permanent Injunction, Docket Entry No. 162; and (c) Plaintiffs' Proposed Findings of Fact and Conclusions of Law, Docket Entry No. 163.

On January 9, 2019, the Court noted that the plaintiffs failed to: (i) identify any part of the January 9, 2018 "TRO" authorizing an alternative method of service on the defendants of the September 6, 2018 order and the plaintiffs' inquest submissions; and (ii) make any motion seeking permission to use an alternative method of service, on the defendants, of the September 6, 2018 order and their inquest submissions pursuant to the September 6, 2018 order. The Court found that the plaintiffs failed to comply with the September 6, 2018 directive to file proof of service of their inquest submissions and a copy of the September 6, 2018 order on the defaulting defendants and directed the plaintiffs to file proof of service on the defendants, on or before

3

January 16, 2019, as directed by the September 6, 2018 order. See Docket Entry No. 171. On January 10, 2019, the plaintiffs' attorney filed a Certificate of Service, asserting that: (1) "[o]n September 7, 2018, pursuant to the alternative methods of service authorized by both the TRO and PI Order, Plaintiffs served each and every Defaulting Defendant with the September 6, 2018 Order. (Dkt. 160)"; and (2) on September 28, 2018, "pursuant to the alternative methods of service authorized by both the TRO and PI Order, Plaintiffs served each and every Defaulting Defendant with Plaintiff's Inquest Papers." Docket Entry No. 172.

By a letter, dated January 11, 2019, the plaintiffs asserted that "they served Defaulting Defendants with the September 6, 2018 Order and their inquest submissions in accordance with the alternative methods of service expressly authorized by Hon. William H. Pauley III in his entrance of the TRO, PI Order and Amended PI Order. (Dkts. 21, 27 and 28)" and requested "that the Court continue to authorize the alternative methods of service on defendants previously authorized by the TRO, PI Order and Amended PI Order." Docket Entry No. 173. The plaintiffs' January 11, 2019 request was denied. See Docket Entry No. 174.

### FAILURE TO COMPLY WIITH THE SEPTEMBER 6, 2018 AND JANUARY 9, 2019 ORDERS

The plaintiffs' assertion that they served the defendants with the September 6, 2018 order and the inquest submissions in accordance with "the alternative methods of service expressly authorized by Hon. William H. Pauley III in his entrance of the TRO, PI Order and Amended PI Order. (Dkts. 21, 27 and 28)" is frivolous. The December 19, 2017 "TRO" order authorized alternative service on the defendants by electronic means of "this Order together with the Summons and Complaint, and all papers filed in support of Plaintiffs' Application seeking this Order." Docket Entry No. 21. The January 17, 2018 "PI Order" authorized alternative service on the defendants by electronic means of "this Order together with the Summons and Complaint,

4

and all papers filed in support of Plaintiffs' Application seeking this Order." Docket Entry No. 27. The January 18, 2018 "Amended PI Order" authorized alternative service on the defendants by electronic means of "this Order together with the Summons and Complaint, and all papers filed in support of Plaintiffs' Application seeking this Order." Docket Entry No. 28. The December 19, 2017, the January 17, 2018 and the January 18, 2018 orders authorized alternative service on the defendants by electronic means of each respective order and "all papers filed in support of Plaintiffs' Application seeking" each respective order. None of the "TRO," "PI" or "Amended PI" orders authorized alternative service on the defendants of any documents apart from those specified in each respective order and none of them authorized alternative service on the defendants of any documents filed prospectively in this action. Thus, the plaintiffs' repeated assertion that their service of the Court's September 6, 2018 order and their inquest submissions was authorized by the "TRO," "PI" or "Amended PI" orders is meritless, disingenuous and wasteful of the Court's time and resources, especially after the Court noted in its January 9, 2019 order the plaintiffs' failure to: (i) identify any part of the "TRO" authorizing an alternative method of service on the defendants of the September 6, 2018 order and their inquest submissions; and (ii) make any motion seeking permission to use an alternative method of service on the defendants of the September 6, 2018 order and their inquest submissions. The Court finds that the plaintiffs failed to comply with the Court's September 6, 2018 and January 9, 2019 orders, by failing to serve the defaulting defendants and file proof of service of the September 6, 2018 order and the plaintiffs' inquest submissions. By failing to serve and file proof of service, as directed in the September 6, 2018 and the January 9, 2019 orders, the plaintiffs deprived the defaulting defendants of their due process rights to receive notice of the Court's order and the inquest submissions, so they may determine whether to contest the amount

5

of damages sought.  See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992).  Accordingly, no relief is warranted based on the plaintiffs' failure to comply with the Court's September 6, 2018 and January 9, 2019 orders.

**INQUEST ON DAMAGES**

*Plaintiffs' Inquest Submissions*

Alternatively, assuming that the plaintiffs complied with the Court's September 6, 2018 and January 9, 2019 orders, the Court will analyze the plaintiffs' inquest submissions.  The plaintiffs assert that the defendants acted willfully, entitling the plaintiffs to "heightened statutory damages."  The plaintiffs seek statutory damages "based upon a combined analysis of the following: 1) the discovery provided by ContextLogic which shows the number of sales of Counterfeit Products made by each Defaulting Defendant on Wish; and 2) each Defaulting Defendants' wrongful use of the Fingerlings Marks and Fingerlings Works. *See* Brennan Aff., ¶ 12 and Wolgang Aff., ¶ 3."  The plaintiffs maintain that, "[g]iven that 15 U.S.C. § 1117(c) provides for statutory damages of up to '$2,000,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just,'" the plaintiffs seek:

- a. an award of $50,000.00 in statutory damages against the following twenty-two (22) Defaulting Defendants: Haoquin, afullstore, AnyBest, At half past eight shops, BestOnlineShop, bon_estore, Chain-shop, Dream nylon, EatSleepShopping, gloryInspring, Gold CROWN66, Happychild99, hengliu, Krimus, liligoodgirl1, liuliu111, Liya Mall, MAMEIKANG, Mei XiaoWuZi, fufu32, lx841118 and Fuzhou haokup mayoi youxian gongshi;
- b. an award of $75,000.00 in statutory damages against the following thirteen (13) Defaulting Defendants: Cyan59, flashingfool.Co., Ltd, Healthy and happy beauty, little moon, BOOTTIME, cool koala, CY-Goodshop, lady goto, HollywoodSuperstore, better life for you, 9_71050, Basma and fuzhourihejiuyeyouxiangongsi;
- c. an award of $150,000.00 in statutory damages against the following fifteen (15) Defaulting Defendants: be keen on face-saving, gumuchuntian, likeren, Linajiadexiaochu, Giantfeet, Dew's Jewelery, chaolong, CommonDaisy, fhhghjjddg, Hell Fashion, Integrity Big Seller, mascot, skyless, JinJun and Linglishop;

d. an award of $300,000.00 in statutory damages against the following four (4) Defaulting Defendants; Anleolife, Dgxinyingcompany, Little_Sun and HEFEI PINKE;

e. an award of $400,000.00 in statutory damages against the following three (3) Defaulting Defendants; Lych, Casual Shop NO.1 and Gvgger;

f. an award of $500,000.00 in statutory damages against the following two (2) Defaulting Defendants: ChasoberTrade and Golden sea;

g. an award of $750,000.00 in statutory damages against the following two (2) Defaulting Defendants; Fashion China Shoes and happy shopping now; and

h. an award of $2,000,000.00 in statutory damages against the following two (2) Defaulting Defendants; Shared Shop and jeapily.

The plaintiffs assert that they "confirmed that each and every Defaulting Defendant wrongfully used at least one of the Fingerlings Marks. *See* Brennan Aff., ¶ 13, Ex. D."

In support of the plaintiffs' inquest submissions and their motion for a permanent injunction, the plaintiffs submitted an affidavit with exhibits by their attorney, Brennan. Brennan stated that she has "personal knowledge of each and every statement made in" her affidavit, including that the plaintiffs' damages request is

based upon a combined analysis of the following; 1) the discovery provided by ContextLogic, Inc., a Delaware corporation ("ContextLogic") which owns and operates Wish.com, a San Francisco, California-based, global online marketplace and e-commence platform ("Wish") , showing the number of sales of Counterfeit Products made by Defaulting Defendants' [sic] on Wish and 2) Defaulting Defendants' wrongful use of the Fingerlings Marks and Fingerlings Works.

Brennan asserts that attached to her affidavit is Exhibit D, "[a] true and correct chart detailing each and every Defaulting Defendants' [sic] 1) number of sales of Counterfeit Products on Wish as identified in ContextLogic's discovery responses; and 2) a brief discussion of Defaulting Defendants' wrongful use of the Fingerlings Marks and Fingerlings Works." Exhibit D to Brennan's affidavit contains four columns entitled: (1) "DEFAULTING DEFENDANT"; (2) "NUMBER OF SALES OF COUNTERFEIT PRODUCTS BASED UPON CONTEXTLOGIC'S DISCOVERY RESPONSES"; (3) "DEFAULTING DEFENDANT'S

WRONGFUL USE OF PLAINTIFFS" INTELLECTUAL PROPERTY"; and (4) "REQUESTED

STATUTORY DAMAGES." The following is an illustrative excerpt from the Exhibit D chart:

| DEFAULTING DEFENDANT | NUMBER OF SALES OF COUNTERFEIT PRODUCTS BASED UPON CONTEXTLOGIC'S DISCOVERY RESPONSES | DEFAULTING DEFENDANT'S WRONGFUL USE OF PLAINTIFFS' INTELLECTUAL PROPERTY | REQUESTED STATUTORY DAMAGES |
|---|---|---|---|
| AnyBest | 0 | used two (2) of Plaintiffs' registered Fingerlings Marks and images of Plaintiffs' registered Fingerlings Works | $50,000.00 |
| BestOnlineShop | 2 | used one (1) of Plaintiffs' registered Fingerlings Marks and images of Plaintiffs' registered Fingerlings Works | $50,000.00 |
| Liligoodgirl1 | 6 | used one (1) of Plaintiffs' registered Fingerlings Marks and images of Plaintiffs' registered Fingerlings Works | $50,000.00 |

### *Legal Standard*

"Even when a default judgment is warranted based on a party's failure to defend, the

allegations in the complaint with respect to the amount of the damages are not deemed true. The

district court must instead conduct an inquiry in order to ascertain the amount of damages with

reasonable certainty." Credit Lyonnais Sec. (USA), Inc. v. Alcantara, 183 F.3d 151, 155 (2d Cir.

1999) (citation omitted). Establishing the appropriate amount of damages involves two steps: (1)

"determining the proper rule for calculating damages on . . . a claim"; and (2) "assessing

plaintiff's evidence supporting the damages to be determined under this rule." Id. When

assessing damages, a court cannot "just accept [the plaintiff's] statement of the damages"; rather,

damages must be established "with reasonable certainty." Transatlantic Marine Claims Agency,

Inc. v. Ace Shipping Corp., Div. of Ace Young Inc., 109 F.3d 105, 111 (2d Cir. 1997).

8

Statutory damages for using counterfeit marks are: "(1) not less than $1,000 or more than $200,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just; or (2) if the court finds that the use of the counterfeit mark was willful, not more than $2,000,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just." 15 U.S.C. § 1117(c). Infringement is deemed willful "[b]y virtue of the default." Tiffany (NJ) Inc. v. Luban, 282 F. Supp.2d 123, 124 (S.D.N.Y. 2003).

### *Application of Legal Standard*

The plaintiffs did not indicate in their inquest submissions the total amount of statutory damages they seek. It appears, from the Court's own calculation of the sums requested against each defendant in Exhibit D to Brennan's affidavit, that the plaintiffs seek a total of $13,225,000 in statutory damages. Included in that amount are: (a) $50,000 the plaintiffs seek from "Fuzhou haokup maoyi youxian gongshi"; (b) $75,000 the plaintiffs seek against "cool koala"; (c) $75,000 the plaintiffs seek from "lady goto"; and (d) $150,000 the plaintiff seeks against "Hell Fashion." The complaint does not name as a defendant "Fuzhou haokup maoyi youxian gongshi"; rather, the complaint, certificate of service of the summons and complaint, the plaintiffs' request for entry of default and the Clerk's Certificate of Default name "Fuzhou" and "haokup maoyi youxian gongshi" as separate defendants. See Docket Entry Nos. 9, 29, 120 and 121. Altholugh the plaintiffs seek damages against "cool koala," subsequent to their inquest submissions the plaintiffs filed a notice of voluntary dismissal of all claims against "cool koala." See Docket Entry Nos. 166 and 167. The complaint does not name as a defendant "lady goto"; rather, the complaint, certificate of service of the summons and complaint, the plaintiffs' request for entry of default and the Clerk's Certificate of Default name "lady" and "goto" as separate

9

defendants. See Docket Entry Nos. 9, 29, 120 and 121. No defendant named "Hell Fashion" is identified in the complaint; rather, the complaint, certificate of service of the summons and complaint, the plaintiffs' request for entry of default and the Clerk's Certificate of Default name as a defendant "Heli Fashion." See Docket Entry Nos. 9, 29, 120 and 121. No explanation was provided by the plaintiffs about any of the above discrepancies. The Court finds that no award of damages is warranted against either the defendant dismissed from the action or the entities not named in the complaint as defendants.

The only evidence the plaintiffs submitted in support of their request for damages is Brennan's affidavit with Exhibit D. Other than asserting that Exhibit D is "[a] true and correct chart detailing each and every Defaulting Defendants' [sic] 1) number of sales of counterfeit Products on Wish as identified in ContextLogic's discovery responses; and 2) a brief discussion of Defaulting Defendants' wrongful use of the Fingerlings Marks and Fingerlings works," Brennan did not explain any part of Exhibit D, including why the requested amounts are warranted against each defendant. For example, Brennan did not explain how the plaintiffs reached the amount of $50,000 they seek in statutory damages against "Anybest," which had "0" "sales of counterfeit products based upon Contextlogic's discovery responses," and why the same amount requested is warranted against defendants, such as "BestonlineShop," "liligoodgirl1" or "MAMEIKAND," to name a few, whose "number of sales of counterfeit products based upon Contextlogic's discovery responses" varies, being 2, 6 and 11, respectively. Brennan contends that the statutory damages requested "are based upon a combination" of: (i) "the discovery provided by ContextLogic., Inc., a Delaware corporation," which "owns and operates Wish.com, a San Francisco California-based, global online marketplace and e-commerce platform," showing the number of sales of Counterfeit Products made by Defaulting

Defendants' [sic] on Wish"; and (ii) "Defaulting Defendants' wrongful use of the Fingerlings Marks and Fingerlings Works," without providing any evidence supporting the contentions or identifying the nature of the "wrongful use" of the plaintiffs' marks by each defendant. Brennan does not identify the source of her knowledge that: (1) "ContextLogic, Inc.," upon whose discovery the plaintiffs based their damages requests, is "a Delaware corporation" which "owns and operates Wish.com"; (2) "Wish.com" is "a San Francisco California-based, global online marketplace and e-commerce platform"; and (3) ContextLogic's discovery "[shows] the number of sales of Counterfeit Products made by defaulting Defendnats' [sic] on Wish." Brennan is not employed by or associated with "ContextLogic. Inc." or "Wish.com," and she does not claim to have knowledge of or expertise in "global online marketplace and e-commerce platform[s]," the way they operate or what they show. Brennan repeats and the plaintiffs rely in their memorandum of law on unsupported assertions made previously by the plaintiffs' attorney Spencer Wolgang ("Wolgang") in his affidavit in support of the plaintiffs' motion for a judgment by default and permanent injunction, Docket Entry No. 141, not filed in support of the damages request, that: (a) "Wish.com" is

> a San Francisco, California-based, global online marketplace and eCommerce platform owned by ContextLogic, Inc., a Delaware corporation ("ContextLogic"), that allow manufacturers and third-party merchants, like Defaulting Defendants, to advertise, distribute, offer for sale, sell and ship their retail products, which originate primarily from China, directly to consumers worldwide, specifically to consumers residing in the U.S., including those in New York (hereinafter, "Wish"). . . . To date, the only discovery Plaintiffs were able to obtain regarding Defaulting Defendants' sales, profits and costs was produced by ContextLogic. ContextLogic's discovery production relates exclusively to Defaulting defendants' User Accounts and merchant Storefronts on Wish. . . . . To sign up as a seller on Wish, a seller first must provide information regarding other online e-commerce platforms it utilizes in addition to Wish, such as AliExpress, Amazon and/or eBay. . . . As a matter of illustration, and as previously presented to the court, Defaulting Defendant Liya Mall is offering for sale and/or selling Counterfeit Products on amazon.com.

11

The complaint does not mention "ContextLogic, Inc." or its relation to "Wish.com." Just like Brennan, Wolgang has no personal knowledge about ContextLogic, Inc., Wish.com, or any other assertions cited above, as he is not employed by or associated with those entities and he does not claim to have knowledge of or expertise in "e-commerce platform[s]," the way they operate or anything else in connection with them. The plaintiffs failed to support their request for damages with any admissible evidence establishing the amount of statutory damages with reasonable certainty.

## MOTION FOR A PERMANENT INJUNCTION, A POST-JUDGMENT ASSET TRANSFER AND ASSET FREEZE ORDER

### *Plaintiffs' Contentions*

Alternatively, assuming that the plaintiffs complied with the Court's September 6, 2018 and January 9, 2019 orders, the Court will analyze the plaintiffs' motion for a permanent injunction, a post-judgment asset transfer and asset freeze order. The plaintiffs assert that defaulting defendants "are individuals and/or businesses located in China who conduct business in the U.S., including within this judicial district, through their User Accounts and on their Merchant Storefronts on Wish. *See* Wolgang Aff., ¶ 6. The plaintiffs contend that, "[b]ased on the discovery produced by ContextLogic, Defaulting Defendants collectively sold a total of 164,779 Counterfeit Products on Wish alone. *See* Brennan Aff., ¶ 13, Ex. D." According to the plaintiffs, they are entitled to a permanent injunction because: (1) "there remains a serious possibility that Defaulting Defendants will continue to infringe Plaintiffs' intellectual property rights" absent a permanent injunction; (2) the plaintiffs "suffered lost profits as a result of Defaulting Defendants' competing, substandard Counterfeit products" as well as "harm to Plaintiffs' goodwill and reputation"; and (3) the plaintiffs "are unable to obtain complete and accurate information regarding actual profits derived from Defaulting Defendants' sales of

Counterfeit Products," due to the defendants' failure to appear in the action. Thus, "monetary damages alone are inadequate to compensate Plaintiffs for the damage they have incurred and will continue to incur if a permanent injunction is not entered.

The plaintiffs contend that they are entitled to a post-judgment asset freeze, the transfer of defaulting defendants' frozen assets and post-judgment interest on defaulting defendants' frozen assets. More specifically, the plaintiffs

> request that the Court order that any money, securities or other property or assets of Defaulting Defendants (whether said assets are located in the U.S. or abroad) from any accounts associated with or utilized by any Defaulting Defendant, Defaulting Defendant's User Account(s) and/or Defaulting Defendants' Merchant Storefront(s) (whether said account is located in the U.S. or abroad) ("Defaulting Defendants' Assets") from any accounts associated with or utilized by any Defaulting Defendant, any Defaulting Defendants; User Account(s) and/or any Defaulting Defendant's Merchant Storefront(s) (whether said account is located in the U.S. or abroad) ("Defaulting Defendants' Financial Accounts") that were and/or are attached and frozen or restrained pursuant to the TRO, PI Order and Amended PI Order, or any future order entered by the Court in this Action, including, but not limited to, those Defaulting Defendants' accounts attached and frozen or restrained by PayPal Inc. ("PayPal"), ContextLogic, Payoneer Inc., the payment services offered by the Alibaba Group d/b/a Alibaba.com and Aliexpress.com (*e.g.*, Alipay.com Co., Ltd., Ant Financial Services group( ("AliPay") and other companies or agencies that engage in the processing or transfer of money and/or real or personal property of Defaulting Defendants be transferred to Plaintiff as partial or complete satisfaction of the damages awarded to Plaintiffs by the Court.

The plaintiffs request that, until they recover the entire judgment from each defaulting defendant, "this Court order that post-judgment interest accrue against any remaining balance after the Defaulting Defendants' Frozen Assets are transferred to Plaintiffs as part of this judgment."

### Legal Standard

A plaintiff seeking a permanent injunction must demonstrate that: (1) "it has suffered an irreparable injury"; (2) "remedies available at law, such as monetary damages, are inadequate to compensate for that injury"; (3) "considering the balance of hardships between the plaintiff and

defendant, a remedy in equity is warranted"; and (4) "the public interest would not be disserved by a permanent injunction." Ebay Inc. v. MercExchange, L.L.C., 547 U.S. 388, 391, 126 S. Ct. 1837, 1839 (2006).

***Application of Legal Standard***

The plaintiffs assert that they are entitled to a permanent injunction because: (i) "as plead in the Complaint and supported by the uncontroverted evidence, Defaulting Defendants infringed Plaintiffs' Fingerlings Marks and one or more of the Fingerlings Works"; (ii) "plaintiffs have shown a threat of future infringement and Plaintiffs cannot be compensated properly with monetary relief alone"; and (iii) "the balance of hardship unquestionably and overwhelmingly favors Plaintiffs, since they have suffered, and will continue to suffer, irreparable harm to their business, profits, goodwill and reputation as a result of Defaulting Defendants' willful and knowing sales of substandard imitations of the Fingerlings Products." However, other than making conclusory assertions and relying solely on the defendants' default, the plaintiffs submitted no admissible evidence establishing that the requirements for a permanent injunction are satisfied. The plaintiffs failed to make citation to any authority for the proposition that default alone is sufficient to establish the requirements for a permanent injunction. Accordingly, granting the plaintiffs' request for a permanent injunction is not warranted.

## RECOMMENDATION

For the foregoing reasons, I recommend that: (1) no damages be awarded to the plaintiffs; and (2) the plaintiffs' request for a permanent injunction, post-judgment asset transfer and asset freeze order be denied.

14

**FILING OF OBJECTIONS TO THIS REPORT AND RECOMMENDATION**

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report to file written objections. See also Fed. R. Civ. P. 6. Such objections, and any responses to objections, shall be filed with the Clerk of Court, with courtesy copies delivered to the chambers of the Honorable William H. Pauley, III, 500 Pearl Street, Room 1920, New York, New York, 10007, and to the chambers of the undersigned, 40 Centre Street, Room 425, New York, New York, 10007. Any requests for an extension of time for filing objections must be directed to Judge Pauley. *Failure to file objections within fourteen (14) days will result in a waiver of objections and will preclude appellate review.* See Thomas v. Arn, 474 U.S. 140, 106 S. Ct. 466 (1985); Cephas v. Nash, 328 F.3d 98, 107 (2d Cir. 2003).

Dated: New York, New York
            February 28, 2019

Respectfully submitted,

_Kevin Nathaniel Fox_
KEVIN NATHANIEL FOX
UNITED STATES MAGISTRATE JUDGE

15