UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------
WOWWEE GROUP LIMITED, *et al.*,  :
                        Plaintiffs,  :   17cv9893
      -against-              :   MEMORANDUM & ORDER

HAOQIN, *et al.*,  :
                        Defendants.  :
------------------------------------------------------------

WILLIAM H. PAULEY III, Senior United States District Judge:

        Plaintiffs filed this action against a slew of foreign counterfeiters ("Defendants") for infringing trademarks and copyrights related to the popular "Fingerlings" children's toys. On June 29, 2018, this Court granted Plaintiffs' motion for a default judgment on all claims as to the Defendants who did not appear in this action (the "Defaulting Defendants," listed in Attachment A to this Memorandum & Order). (See ECF No. 153.) That same day, this Court referred this matter to Magistrate Judge Kevin Nathaniel Fox for: (1) a damages inquest; and (2) a Report and Recommendation on Plaintiffs' May 21, 2018 motion for a permanent injunction, a post-judgment asset transfer, and an asset freeze order. (See ECF No. 154.)

        On February 28, 2019, Magistrate Judge Fox issued a Report and Recommendation (the "Report") recommending that no damages be awarded to Plaintiffs and that Plaintiffs' motion for injunctive relief be denied.[1] (See Report, ECF No. 177, at 14.)

---

[1] The Report also asserted that this Court granted relief exceeding the scope of Plaintiffs' request. (See Report at 2.) Specifically, this Court entered a default judgment against Defendants on all of Plaintiffs' claims, even though Plaintiffs stated in a footnote to their motion that they were not "waiv[ing] their [copyright infringement claim]." (See ECF No. 162, at 3 n.3.) This footnote only clarified the scope of damages sought because Plaintiffs still asked for injunctive relief on their copyright claims. Moreover, the Report's interpretation overlooks the plain language in the text of Plaintiffs' Proposed Default Judgment Order. (See ECF No. 143, at 3 ("Judgment is granted in favor of Plaintiffs on all claims against Defaulting Defendants in the Complaint." (emphasis added)).)

Plaintiffs timely objected to the Report. (See ECF No. 179.) For the reasons that follow, this Court rejects Magistrate Judge Fox's Report and Recommendation in its entirety and starts over.

## LEGAL STANDARD

This Court "may accept, reject, or modify, in whole or in part, the findings or recommendations" of a magistrate judge. 28 U.S.C. § 636(b)(1). "Courts review de novo those parts of a report and recommendation to which objections are made, and the remainder for clear error on the face of the record." Mulosmanaj v. Colvin, 2016 WL 4775613, at *2 (S.D.N.Y. Sept. 14, 2016) (citing 28 U.S.C. § 636(b)(1)). As Plaintiffs lodged specific objections to the entire Report, this Court reviews the Report de novo.

## DISCUSSION

I.   Service of Process

As a preliminary matter, the magistrate judge recommended denying all of Plaintiffs' requested relief based on a purported failure to follow court orders and impermissible use of alternative methods of service. Those concerns are unfounded and do not warrant barring Plaintiffs from damages or injunctive relief.

First, the Report concludes that Plaintiffs failed to comply with a September 6, 2018 court order by neglecting to submit a certificate of service concurrently with their inquest submissions. This error was harmless, as Plaintiffs remedied the oversight on January 10, 2019 and indicated that the Defaulting Defendants had been timely served. (See ECF No. 172.)

Second, the Report takes issue with Plaintiffs' use of alternative methods of service—specifically, registered electronic mail and website publication—to provide the Defaulting Defendants with court orders and Plaintiffs' inquest submissions. But Plaintiffs' course of action was appropriate. The Defaulting Defendants are anonymous individuals or

2

businesses located primarily in China that traffic in counterfeit goods on the Internet. Their identities consist of only a username and corresponding email address. (Compl., ECF No. 9 ("Compl."), ¶¶ 24–29.) In view of the practical inability to reach such elusive Defendants by traditional methods, this Court expressly authorized service via electronic means in its December 19, 2017 Temporary Restraining Order (ECF No. 21, at 15–16), January 17, 2018 Preliminary Injunction Order (ECF No. 27, at 11–12), and January 18, 2018 Amended Injunction Order (ECF No. 28 ("Amended PI Order"), at 11–12). By virtue of the Defaulting Defendants' failure to appear, Plaintiffs could not acquire any additional identifying information about them that would render electronic service less necessary or make another method of service possible.

Permitting continued service in this manner is consistent with other cases in this district where judges recognized the propriety of electronic service of process for "[allegedly] online [internationally]-based counterfeit[ers] linked to a functioning email address but [who] otherwise remained anonymous." See, e.g., Dama S.p.A. v. Does, 2015 WL 10846737, at *2 (S.D.N.Y. June 15, 2015). And though this Court never explicitly authorized alternative service after the Amended Preliminary Injunction Order, judges in this district routinely allow plaintiffs to continue serving anonymous online defaulting defendants through electronic means without explicit reauthorization. See, e.g., Tapestry, Inc. v. baoqingtianff, No. 18-cv-7650-PAE, ECF No. 31 (S.D.N.Y. Jan. 8, 2019); Ideavillage Prod. Corp. v. ABC789456, No. 18-cv-2962-NRB, ECF No. 40 (S.D.N.Y. Jun. 25, 2018). Indeed, Plaintiffs used the electronic method of service to obtain the default judgment this Court granted before referring the matter to the magistrate judge for an inquest.

II.     Statutory Damages

Plaintiffs seek a total of $13,150,000 in statutory damages on their trademark

claims against the Defaulting Defendants and propose a tiered structure where different awards are granted as to each Defaulting Defendant depending on how many counterfeit products each Defendant sold. (See Aff. of Mary Kate Brennan in Supp. of Pl.'s Request for Statutory Damages and a Permanent Inj., ECF No. 161 ("Brennan Aff."), Ex. D.) The Report recommends no statutory damages based on Plaintiffs' inability to provide "any admissible evidence establishing the amount of statutory damages with reasonable certainty." (See Report at 12.)

A. Relevant Standard

"It is an ancient common law axiom that a defendant who defaults thereby admits all well-pleaded factual allegations contained in the complaint." City of N.Y. v. Mickalis Pawn Shop, LLC, 645 F.3d 114, 137 (2d Cir. 2011) (citation and quotation marks omitted); see also All-Star Mktg. Grp., LLC v. Media Brands Co., 775 F. Supp. 2d 613, 618 (S.D.N.Y. 2011) ("Where, as here, the court determines that defendant is in default, the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." (citation and quotation marks omitted)). And "[b]y virtue of the default, [the defendants'] infringement is deemed willful." Tiffany (NJ) Inc. v. Luban, 282 F. Supp. 2d 123, 124 (S.D.N.Y. 2003); see also Chloe v. Zarafshan, 2009 WL 2956827, at *7 (S.D.N.Y. Sept. 15, 2009) ("Willfulness may be established by a party's default because an innocent party would presumably have made an effort to defend itself.").

A damages inquest may proceed by affidavit without an in-person hearing "as long as [the Court has] ensured that there was a basis for the damages specified in the default judgment." All-Star Mktg. Grp., 775 F. Supp. 2d at 619 (alteration in original) (citing Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., 109 F.3d 105, 111 (2d Cir. 1997)). On an inquest, a plaintiff bears the burden to "introduce sufficient evidence to establish

4

the amount of damages with reasonable certainty." RGI Brands LLC v. Cognac Brisset-Aurige, S.A.R.L., 2013 WL 1668206, at *6 (S.D.N.Y. Apr. 18, 2013), report and recommendation adopted, 2013 WL 4505255 (S.D.N.Y. Aug. 23, 2013). In other words, a court must be able to evaluate the fairness of the proposed damages award "based on admissible evidence." Bumble & Bumble, LLC v. Pro's Choice Beauty Care, Inc., 2016 WL 658310, at *3 (S.D.N.Y. Feb. 17, 2016), report and recommendation adopted, 2016 WL 1717215 (S.D.N.Y. Apr. 27, 2016).

Under the Lanham Act, a plaintiff who has established liability for a defendant's use of a counterfeit mark may elect, at any time before final judgment, to recover an award of statutory damages in lieu of requesting and proving actual damages or lost profits. See 15 U.S.C. § 1117(c). These statutory damages, when arising from a defendant's willful use of a plaintiff's mark, may not exceed $2,000,000 "per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just." 15 U.S.C. § 1117(c)(2). This remedy recognizes the practical impossibility of determining profits, sales, or lost revenue in cases involving anonymous counterfeiters. See Louis Vuitton Malletier S.A. v. LY USA, Inc., 676 F.3d 83, 110 (2d Cir. 2012) ("In passing the [Lanham] Act, which allows trademark plaintiffs to elect to recover statutory damages in counterfeit cases in lieu of actual damages, Congress apparently sought to ensure that plaintiffs would receive more than de minimis compensation for the injury caused by counterfeiting as a result of the unprovability of actual damages despite the plain inference of damages to the plaintiff from the defendant's unlawful behavior."); see also John Wiley & Sons, Inc. v. Book Dog Books, LLC, 327 F. Supp. 3d 606, 632 (S.D.N.Y. 2018) ("The purpose of statutory damages is to allow a plaintiff to seek damages where it is unable to prove actual damages.").

In assessing statutory damages under § 1117(c), "courts often . . . look[] for guidance to the better developed case law under the Copyright Act [17 U.S.C § 504(c)] . . . which permits an award of statutory damages for willful copyright infringement." Malletier v. Carducci Leather Fashions, Inc., 648 F. Supp. 2d 501, 504 (S.D.N.Y. 2009) (collecting cases). This case law directs courts to consider the following factors:

> (1) the expenses saved and the profits reaped; (2) the revenues lost by the plaintiff; (3) the value of the [trademark]; (4) the deterrent effect on others besides the defendant; (5) whether the defendant's conduct was innocent or willful; (6) whether a defendant has cooperated in providing particular records from which to assess the value of the infringing material produced; and (7) the potential for discouraging the defendant.

All-Star Mktg. Grp., 775 F. Supp. 2d at 622–23 (collecting cases) (alteration in original).

B. Application

The Report recommends no statutory damages based on Plaintiffs' purported failure to prove their damages with admissible evidence. The evidence submitted on the damages inquest consisted of (1) an affidavit from Plaintiffs' attorney and (2) a summary chart prepared by Plaintiffs detailing the number of trademarks infringed and counterfeit products sold by each Defaulting Defendant. This summary chart was based on discovery responses provided by ContextLogic, Inc. ("ContextLogic"), the owner of Wish.com, the marketplace website where the Defaulting Defendants sold their goods. (See Brennan Aff., at 2–3, Exhibit D.)

Plaintiffs contend that this chart is admissible because "[a party] may use a summary [or] chart . . . to prove the content of voluminous writings [or] recordings . . . that cannot be conveniently examined in court." Fed. R. Evid. 1006. However, "[t]he proponent must make the originals or duplicates available for examination or copying, or both." Fed. R. Evid. 1006. And Plaintiffs did not provide any affidavit from ContextLogic or Wish.com to lay

the foundation for admitting this summary chart. See Advanced Mktg. Grp., Inc. v. Bus. Payment Sys., LLC, 2013 WL 45868, at *8 (S.D.N.Y. Jan. 13, 2013) (finding summary chart inadmissible during a damages inquest where plaintiff did not submit the underlying original records to the court).

But the failure to provide admissible evidence as to lost profits, revenues, or counterfeit sales does not end the statutory damages inquiry. To be sure, barring statutory damages based on a plaintiff's inability to prove its losses with certainty undermines the express purpose of the remedy. Even if Plaintiffs' submissions do not justify their proposed award, this Court may still grant some level of damages based on a holistic consideration of the seven factors applied in copyright cases. See, e.g., Lane Crawford LLC v. Kelex Trading (CA) Inc., 2013 WL 6481354, at *3 (S.D.N.Y. Dec. 3, 2013), report and recommendation adopted, 2014 WL 1338065 (S.D.N.Y. Apr. 3, 2014) (awarding statutory damages without evidence as to how many marks had been infringed, defendants' revenue, or plaintiffs' lost profits).

In general, "judges have issued awards far below the statutory maximum . . . where the defendant willfully infringes on the plaintiff's mark . . . but where there is no concrete information about the defendant's actual sales figures and profits and the estimate of plaintiff's lost revenue." All-Star Mktg. Grp., 775 F. Supp. 2d at 624 (collecting cases). Here, with respect to the first two factors, there is no admissible evidence of the Defaulting Defendants' profits or volume of sales, or of the revenues lost by Plaintiffs. With respect to the third factor—the value of the trademark—Plaintiffs allege that their products were "widely recognized as the must-have toy product for 2017 as indicated by the toy industry's leaders and features in major news outlets . . . ." (Compl. ¶ 11.) And such allegations must be accepted as true on default judgment. "[Courts] infer from the well-known reputations of most or all of the trademarks and the sea of

advertising that presses them on the consciousness of the buying public that they are indeed valuable." Lane Crawford, 2013 WL 6481354, at *4 (quoting Ralph Lauren v. 3M Trading Co., 1999 WL 33740332, at *6 (S.D.N.Y. Apr. 19, 1999)).

The final four factors all favor Plaintiffs. The fourth factor—the goal of deterrence—warrants a substantial damages award. See AW Licensing, LLC v. Bao, 2016 WL 4137453, at *3 (S.D.N.Y. Aug. 2, 2016) ("[T]he goal of deterring similar conduct by other enterprises requires a substantial award."). As to the fifth factor, this Court has already determined that the Defaulting Defendants' behavior was willful because of their failure to appear. By the same token, the Defaulting Defendants also refused to cooperate in providing any records that would assist the Court in assessing the value of the infringing material. And finally, a substantial damages award will discourage the Defaulting Defendants from continuing their illegal conduct.

Viewing these factors holistically, this Court concludes that an award of $25,000 against each Defaulting Defendant is appropriate, totaling $1,550,000 in statutory damages. An award of this magnitude will "impress upon [defendants] that there are consequences for [their] misconduct . . . and serve as a specific deterrent to [defendants] and as a general deterrent to others who might contemplate engaging in infringing behavior in the future." All-Star Mktg. Grp., 775 F. Supp. 2d at 625 (citation and quotation marks omitted) (first, second, and fourth alterations in original) (collecting cases where judges deemed awards in the $25,000–$50,000 range appropriate).

This Court declines to adopt Plaintiffs' proposed tiered structure based on each Defaulting Defendant's purported sales volume because it is premised on inadmissible evidence. And in any event, "on its face, the Lanham Act does not suggest that statutory damages may be

advertising that presses them on the consciousness of the buying public that they are indeed valuable." Lane Crawford, 2013 WL 6481354, at *4 (quoting Ralph Lauren v. 3M Trading Co., 1999 WL 33740332, at *6 (S.D.N.Y. Apr. 19, 1999)).

The final four factors all favor Plaintiffs. The fourth factor—the goal of deterrence—warrants a substantial damages award. See AW Licensing, LLC v. Bao, 2016 WL 4137453, at *3 (S.D.N.Y. Aug. 2, 2016) ("[T]he goal of deterring similar conduct by other enterprises requires a substantial award."). As to the fifth factor, this Court has already determined that the Defaulting Defendants' behavior was willful because of their failure to appear. By the same token, the Defaulting Defendants also refused to cooperate in providing any records that would assist the Court in assessing the value of the infringing material. And finally, a substantial damages award will discourage the Defaulting Defendants from continuing their illegal conduct.

Viewing these factors holistically, this Court concludes that an award of $25,000 against each Defaulting Defendant is appropriate, totaling $1,550,000 in statutory damages. An award of this magnitude will "impress upon [defendants] that there are consequences for [their] misconduct . . . and serve as a specific deterrent to [defendants] and as a general deterrent to others who might contemplate engaging in infringing behavior in the future." All-Star Mktg. Grp., 775 F. Supp. 2d at 625 (citation and quotation marks omitted) (first, second, and fourth alterations in original) (collecting cases where judges deemed awards in the $25,000–$50,000 range appropriate).

This Court declines to adopt Plaintiffs' proposed tiered structure based on each Defaulting Defendant's purported sales volume because it is premised on inadmissible evidence. And in any event, "on its face, the Lanham Act does not suggest that statutory damages may be

calculated . . . [by] setting a base amount, and then multiplying that amount by the number of each falsely branded <u>item</u> found to have been sold . . . by a defendant." <u>Sream, Inc. v. Khan Gift Shop, Inc.</u>, 2016 WL 1130610, at *8 (S.D.N.Y. Feb. 23, 2016), <u>report and recommendation adopted</u>, 2016 WL 1169517 (S.D.N.Y. Mar. 22, 2016) (emphasis in original). As here, where there is insufficient evidence as to the number of marks each Defaulting Defendant infringed, "one large lump sum, rather than an award comprised of a lesser per-mark/type amount for multiple marks or types of goods, is appropriate." <u>Lane Crawford</u>, 2013 WL 6481354, at *4 (collecting cases).

The Lanham Act also permits a plaintiff to receive post-judgment interest

> on any money judgment in a civil case recovered in a district court . . . [to] be calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of the judgment.

28 U.S.C. § 1961(a). Accordingly, Plaintiffs are awarded post-judgment interest on the money judgment entered in this action. <u>See, e.g.</u>, <u>Bumble & Bumble</u>, 2016 WL 658310, at *12 (granting post-judgment interest after plaintiff's success on the merits of trademark infringement claim); <u>Gucci Am. Inc. v. Tyrell-Miller</u>, 678 F. Supp. 2d 117, 124 (S.D.N.Y. 2008) (same).

III.     <u>Injunctive Relief</u>

Plaintiffs also seek a permanent injunction to prevent future infringement by Defendants, as well as a post-judgment asset transfer and asset freeze order. The Report recommends denying this relief because Plaintiffs "submitted no admissible evidence establishing that the requirements for a permanent injunction are satisfied." (Report at 14.)

But Plaintiffs need not introduce "admissible evidence" to demonstrate that

Defendants' conduct warrants injunctive relief. Importantly, "the Defendants, by virtue of their default, have admitted that they infringed Plaintiffs' copyrights and trademarks." Cengage Learning, Inc. v. Shi, 2015 WL 5167775, at *6 (S.D.N.Y. Sept. 3, 2015), report and recommendation adopted, 2017 WL 1063463 (S.D.N.Y. Mar. 21, 2017) (emphasis added); see also Laboratorios Rivas, SRL v. Ugly & Beauty, Inc., 2013 WL 5977440, at *11 (S.D.N.Y. Nov. 12, 2013), report and recommendation adopted, 2014 WL 112397 (S.D.N.Y. Jan. 8, 2014) ("As noted above, [the defendant's] default constitutes an admission of liability as to the trademark infringement claim . . . .").

Considering the Defaulting Defendants' admission of liability, this Court "may issue an injunction on a motion for default judgment provided that the moving party shows that (1) it is entitled to injunctive relief under the applicable statute and (2) it meets the prerequisites for the issuance of an injunction." N. Face Apparel Corp. v. Moler, 2015 WL 4385626, at *8 (S.D.N.Y. July 16, 2015), report and recommendation adopted, 2015 WL 5472939 (S.D.N.Y. Sept. 16, 2015) (citation and quotation marks omitted). Plaintiffs have satisfied the first prong because the Lanham Act and the Copyright Act both endow courts with the power to grant injunctive relief. See 15 U.S.C. § 1116(a) (Lanham Act); 17 U.S.C. § 502(a) (Copyright Act).

This Court next turns to the second prong—the prerequisites for the issuance of an injunction—and must consider whether Plaintiffs have shown:

> (1) that [they] [have] suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff[s] and the defendant[s], a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

eBay Inc. v. MercExhange, L.L.C., 547 U.S. 388, 391 (2006). It is well-established in this circuit that "[i]n trademark disputes, a showing of likelihood of confusion establishes . . .

irreparable harm." Malletier v. Burlington Coat Factory Warehouse Corp., 426 F.3d 532, 537 (2d Cir. 2005). Accepting the allegations in the Complaint as true, Plaintiffs have demonstrated irreparable harm—namely, that because the Defaulting Defendants sold counterfeit versions of Plaintiffs' products, "there is [a] likelihood that an appreciable number of ordinarily prudent purchasers are likely to be misled, or indeed simply confused, as to the source of the goods in question." Salvatore Ferragamo S.p.A. v. Does, 2013 WL 12108075, at *10 (S.D.N.Y. Nov. 22, 2013) (quoting Lobo Enters., Inc. v. Tunnel, Inc., 822 F.2d 331, 333 (2d Cir. 1987)), report and recommendation adopted, 2014 WL 12543812 (S.D.N.Y. Feb. 5, 2014).

The second factor—the inadequacy of remedies at law—also favors Plaintiffs. The Defaulting Defendants' past infringing behavior and potential for further activity across multiple marketplace platforms amply suggest that "[the Defaulting Defendants] might continue to engage in infringing activities and counterfeiting unless enjoined by the Court, demonstrating the danger that monetary damages will fail to fully provide [Plaintiffs] with relief." Rovio Entm't, Ltd. v. Allstar Vending, Inc., 97 F. Supp. 3d 536, 547 (S.D.N.Y. 2015); see also Laboratorios Rivas, 2013 WL 5977440, at *11 ("A court may infer from a defendant's default that it is willing to or may continue its infringement." (citation omitted)).

The third factor—the balance of hardships—further counsels in favor of a permanent injunction. Plaintiffs' hardship is obvious and substantial. And "[i]t is axiomatic that an infringer . . . cannot complain about the loss of ability to offer its infringing product." WPIX, Inc. v. ivi, Inc., 691 F.3d 275, 287 (2d Cir. 2012). While a permanent injunction implicates third parties like PayPal and Wish.com, such third-party hardships do not regularly dissuade judges from granting injunctive relief. See, e.g., Cengage Learning, Inc. v. Bhargava, 2017 WL 9802833, at *1 (S.D.N.Y. Aug. 22, 2017), report and recommendation adopted, 2018 WL

1989574 (S.D.N.Y. Apr. 25, 2018); N. Face Apparel Corp., 2015 WL 4385626, at *10; Ideavillage Prod. Corp. v. Chinafocus, No. 17-cv-3894-RA, ECF No. 50, at 4 (S.D.N.Y. Feb. 9, 2018).

And as to the fourth factor, "the public has a compelling interest in protecting copyright owners' marketable rights to their work and the economic incentive to continue creating . . . creative work." WPIX, Inc., 691 F.3d at 287. Moreover, with respect to trademark infringement, "the public has an interest in not being deceived—in being assured that the mark it associates with a product is not attached to goods of unknown origin and quality." New York City Triathlon, LLC v. NYC Triathlon Club, Inc., 704 F. Supp. 2d 305, 344 (S.D.N.Y. 2010). Thus, the public interest also tips in Plaintiffs' favor, and viewing these factors collectively, a permanent injunction is warranted.

Finally, this Court grants Plaintiffs' motion for a post-judgment asset transfer and asset freeze order. "[C]ourts in this district routinely order transfers of infringing defendant[s'] frozen assets to plaintiffs in similar [trademark infringement] cases, relying on the authority to issue injunctive relief under Federal Rule of Civil Procedure 64, [Section] 1116(a) of the Lanham Act, and this Court's inherent equitable power to issue remedies ancillary to its authority to provide final relief." Off-White LLC v. ^_^Warm House^_^Store, 2019 WL 418501, at *6 (S.D.N.Y. Jan. 17, 2019) (collecting cases). "[T]he need for [the asset freeze and transfer] is clear: without this relief, defendants would have . . . a fourteen-day window [under Federal Rule of Civil Procedure 62(a)] in which to hide their assets . . . [and] [t]he risk that they might do so, which in part justified the preliminary injunction, is not lessened by the entry of judgment." Tiffany (NJ) LLC v. Forbse, 2015 WL 5638060, at *4 (S.D.N.Y. Sept. 22, 2015).

CONCLUSION

For the foregoing reasons, this Court rejects Magistrate Judge Fox's Report in its entirety. Having considered this matter de novo, this Court awards Plaintiffs $25,000 in statutory damages as to each Defaulting Defendant, for a total of $1,550,000, plus post-judgment interest. This Court also grants Plaintiffs' motion for a permanent injunction, post-judgment asset transfer, and asset freeze order.

Plaintiffs are directed to submit an amended Proposed Default Judgment Order reflecting this Court's damages award and conforming the list of Defaulting Defendants to those enumerated in Attachment A to this Memorandum & Order by March 27, 2019. The Clerk of Court is directed to terminate the motion pending at ECF No. 140 and to mark this case as closed.[2]

Dated: March 22, 2019
       New York, New York

SO ORDERED:

_____
WILLIAM H. PAULEY III
U.S.D.J.

---

[2] The Report identifies discrepancies between the names of some Defaulting Defendants in the Complaint and in Plaintiffs' motion for default judgment. This Court is satisfied that these Defendants—Heli Fashion, lady goto, and Fuzhou haokuo maoyi youxian gongshi—were properly served with the Summons, Complaint, and court orders in this action. (See, e.g., ECF No. 29.) Rather than require Plaintiffs to amend the Complaint on the eve of a final default judgment, this Court instead directs the Clerk of Court to amend the caption in this action to reflect the names of the Defaulting Defendants as identified in Attachment A to this Memorandum & Order.

# ATTACHMENT A – DEFAULTING DEFENDANTS

1) Haoqin
2) afullstore
3) AnyBest
4) At half past eight shops
5) be keen on face-saving
6) BestOnlineShop
7) bon_estore
8) Chai-shop
9) Cyan59
10) Dream nylon
11) EatSleepShopping
12) flashingfool.Co.,Ltd
13) gloryInspring
14) Gold crown66
15) happy shopping now
16) Happychild99
17) Healthy and happy beauty
18) hengliu
19) Krimus
20) liligoodgirl1
21) little moon
22) liuliu111
23) Liya Mall
24) MAMEIKANG
25) Mei XiaoWuZi
26) fufu32
27) lxq841118
28) Fuzhou haokup maoyi youxian gongshi
29) BOOTTIME
30) CY-Goodshop
31) Fashion China Shoes
32) gumuchuntian
33) lady goto
34) likeren
35) HollywoodSuperStore
36) Linajiadexiaochu
37) better life for you
38) Giantfeet
39) Dew's Jewelry
40) 9_71050
41) anleolife
42) Basma
43) chaolong
44) CommonDaisy
45) Dgxinyingcompany
46) fhhghjjddg
47) fuzhourihejiuyeyouxiangongsi
48) Gvgger
49) Heli Fashion
50) Integrity Big Seller
51) Little_Sun
52) mascot
53) skyless
54) JinJun
55) Linglishop
56) lych
57) Casual Shop NO.1
58) ChasoberTrade
59) Golden sea
60) HEFEI PINKE
61) Shared Shop
62) jeapily